[Civ. No. 16338. Third Dist. Apr. 26, 1978.]

ROBERT K. STONE, Plaintiff and Respondent, v.
JOHN N. BACH, Defendant and Appellant.

## COUNSEL

Ropers, Majeski, Kohn, Bentley & Wagner, Michael J. Brady, Clinton H. Coddington, Goldstein, Barceloux & Goldstein, Peters, Fuller, Rush, Schooling Luvaas, David R. Fuller and Ronald E. Stewart for Plaintiff and Respondent.

Maxim N. Bach for Defendant and Appellant.

## OPINION

**PARAS, Acting P. J.**—Plaintiff Robert K. Stone has filed this motion for dismissal (Cal. Rules of Court, rule 42) of defendant John N. Bach's appeal following judgment in an action for partnership dissolution and accounting. The former partners are lawyers.

After an accounting to the court, judgment dissolving the partnership was entered July 9, 1976. It determined the assets of the partnership, including uncollected fees and legal costs advanced, and divided them. It recited that Bach had earlier been ordered to deposit partnership monies collected by him ($257,463 including interest) into a bank account, which he had not done (see *infra*); and ordered him either to pay all such monies into an existing trustee account (in which other partnership monies were on deposit) or to pay Stone one-half directly. Finally, the judgment retained jurisdiction regarding the uncollected fees and costs.

The record discloses that on two separate dates Bach was found in contempt by the trial court. On October 15, 1975, pending trial of the action, Judge Curtiss E. Wetter found Bach in violation of Judge Vernon Stoll's order of March 5, 1973, requiring him to deposit into specified accounts all partnership receipts in his possession; Judge Wetter found that Bach knowingly violated this order in 13 specific instances. And on

November 18, 1977, after the judgment, Bach was again found in contempt by Judge Wetter, this time for refusing to be sworn for examination as a judgment debtor. (Code Civ. Proc., § 714.) In neither instance, however, did the trial judge impose a penalty for the contempt.

The basis for Stone's motion to dismiss is a rule summarized as follows: "It is well established that an appellate court may stay or dismiss an appeal by a party who stands in contempt of the legal orders and processes of the superior court." (*MacDonald* v. *Superior Court* (1977) 75 Cal.App.3d 692, 696 [141 Cal.Rptr. 667]; *MacPherson* v. *MacPherson* (1939) 13 Cal.2d 271, 277 [89 P.2d 382].) Usually, the rule has been applied in situations where a party is violating a marital dissolution decree by departing the jurisdiction with the children of the marriage or by otherwise secreting them from the court (see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 144, p. 4139.) However, no good reason exists for limiting the rule to such cases. "The rationale upon which [appellate] relief is denied is that it would be a flagrant abuse of the principles of equity and of the due administration of justice to consider the demands of a party who becomes a voluntary actor before a court and seeks its aid while he stands in contempt of its legal orders and processes." (*Travis* v. *Travis* (1948) 89 Cal.App.2d 292, 295 [200 P.2d 843].)

■ Bach's primary defense to the motion is that in both instances of contempt, no formal written judgment adjudicating it and imposing punishment therefor has been entered. Accordingly, he argues, since he cannot test the validity of the contempt rulings by habeas corpus (*In re Marcario* (1970) 2 Cal.3d 329, 330 [85 Cal.Rptr. 135, 466 P.2d 679]), the rule allowing dismissal of the appeal of a contumacious appellant should not apply and would violate his constitutional right to due process of law if it did. We disagree. Bach misunderstands the rule, which is based upon fundamental equity and is not to be frustrated by technicalities.

In *Tobin* v. *Casaus* (1954) 128 Cal.App.2d 588 [275 P.2d 792, 49 A.L.R.2d 1419], a money judgment was entered against the defendant. He appealed without staying execution. A receiver was appointed to take possession of the defendant's assets, and in connection therewith, a debtor's examination was scheduled. Defendant did not appear and a bench warrant was issued for his arrest. He again failed to appear on a later date. No contempt proceeding was instituted and no contempt hearing was held. Plaintiff moved to dismiss the appeal. Defendant argued that before an appeal could be dismissed on the ground of

defendant's contempt, the offending party must be *adjudicated* in contempt. The court disagreed, ordered the appeal dismissed (but gave the defendant an opportunity to avoid the dismissal by purging the contempt), and stated:

"Appellant attempts to distinguish cases in which proceedings by a defaulting litigant were dismissed on the ground that in each the appellant had previously been adjudged in contempt, or sought the equitable intervention of the court while himself remaining in an inequitable posture. It is true that many reported cases fall into those categories. In *Monterey Coal Co.* v. *Superior Court,* 11 Cal.App. 207 [104 P. 585], a contemptuous party petitioned for a writ of mandate to change venue. In *Weeks* v. *Superior Court,* 187 Cal. 620 [203 P. 93], a writ of mandate was sought to compel entry of a final decree of divorce. In *Paddon* v. *Superior Court,* 65 Cal.App. 479 [224 P. 474], a writ of prohibition to prevent taking depositions was demanded. *Knackstedt* v. *Superior Court,* 79 Cal.App.2d 727 [180 P.2d 375], was a proceeding in mandamus for entry of a final decree of divorce. In *Funfar* v. *Superior Court,* 107 Cal.App. 488 [290 P. 626], there were petitions both for writs of prohibition and mandate. In *Soderberg* v. *Soderberg,* 63 Cal.App. 492 [219 P. 82], the party in default sought modification of a court order. *Travis* v. *Travis,* 89 Cal.App.2d 292 [200 P.2d 843], was an action to vacate a decree, but the court held the form of the proceeding did not alter the principle involved.

"· . . . . . . . . . . . . . . . . . . .

"Appellant cites *O'Neill* v. *Thomas Day Co.,* 152 Cal. 357 [92 P. 856, 14 Ann.Cas. 970], as authority for the proposition that 'before any punishment may be awarded, the party must be adjudged in contempt.' That case, however, clearly discusses punishment for contumeliousness under Code of Civil Procedure, section 1991, and states, at page 363, 'By analysis, *this section* manifestly requires that before a plaintiff is punished he must be adjudged guilty of contempt.' [Italics in original.]

"Such a general rule as urged by appellant would be patently unfair where a recalcitrant litigant secrets himself to avoid punishment for contempt. Under those circumstances, by committing a contempt and then compounding it by avoiding process and punishment therefor, a litigant may blithely proceed to seek judicial consideration. No authorities subsequent to *O'Neill* so hold, and *in numerous cases, proceedings*

*were ordered dismissed where no contempt had been formally found.* In *Paddon,* 'proceedings were pending charging petitioner' with contempt. In *Monterey Coal Co.,* an order to show cause *in re* contempt was pending in the trial court. In *Knackstedt* the petitioner was delinquent in payments but not adjudged in contempt." (Italics added.) (128 Cal.App.2d at pp. 589-590.)

A parallel case is *National Union* v. *Arnold* (1954) 348 U.S. 37 [99 L.Ed. 46, 75 S.Ct. 92]. There a $475,000 judgment was entered against two defendants in a court in the State of Washington. The defendants, one of which was the petitioner labor union, appealed but did not post bond or otherwise obtain a stay of proceedings. Respondents commenced proceedings to discover petitioner's available assets, which disclosed $298,000 in United States government bonds in its possession in California. The Washington court ordered petitioner to deliver the bonds to a receiver for safekeeping pending disposition of the appeal. Upon petitioner's failure to do so, the court adjudged it in contempt. The Washington appellate court then dismissed petitioner's appeal unless it purged itself of the contempt. The United States Supreme Court granted certiorari in order to determine whether dismissal of the appeal violated petitioner's rights to due process and equal protection.

The court concluded that petitioner's constitutional rights were not violated. In part, the court noted: "The dismissal here is not regarded by us as a penalty imposed as a punishment for criminal contempt. It is an exercise of a state court's inherent power to use its processes to induce compliance with a supplemental order reasonably issued in aid of execution. . . .

"The supplemental proceeding indicated that the . . . bonds, to which the court directed its order, constituted the only substantial asset from which payment of respondent's judgment might be realized and that this asset might be dissipated unless placed in protective custody.

"In appraising the reasonableness of the State's order, it is noteworthy that the court did not seek to apply the bonds to the satisfaction of respondents' judgment. It merely directed petitioner to deliver them to the court's receiver for safekeeping. Petitioner's appeal was not dismissed because of petitioner's failure to satisfy a judgment pending an appeal from it. It was dismissed because of petitioner's failure to comply with the

court's order to safeguard petitioner's assets from dissipation pending such appeal.

"Viewing the dismissal of petitioner's appeal in the light of its reasonableness in sustaining the effectiveness of a state's judicial process, as against the rights of a judgment debtor, without filing a supersedeas bond, to refuse to comply with orders safeguarding the value of that judgment, *we find nothing that violates due process of law*." (Italics added.) (348 U.S. at pp. 44-45 [99 L.Ed. at p. 52].)

Bach makes four more contentions, the first of which can only be characterized as frivolous and the remaining three as both frivolous and picayune.

First he contends that the orders involved in the contempt rulings were made by disqualified judges. Yet he does not contend that Judge Stoll was challenged *before* his order of March 5, 1973, or that Judge Wetter was challenged *before* either of his contempt rulings under Code of Civil Procedure sections 170 or 170.6.

To better explain the second and third contentions, we quote from the conclusion of the clerk's certificate supporting the motion to dismiss, filed in accordance with the requirement of rule 42. As submitted by Stone's counsel, who obviously prepared it, it read as follows:

"I, _____ Deputy Clerk of the above-entitled Superior Court, do hereby certify that the above facts are true and correct.

"Dated: January ____, 1978.

> "CLARK A. NELSON, Clerk
> "By _____
> Deputy Clerk"

The certificate was executed by Deputy Clerk N. Lindquist, who inserted by inked stamp the name "Clark A. Nelson" into the first blank space and the numeral "6" into the second, then signed his or her name in the last.

Bach claims that the certificate is defective because it refers to Nelson as the *deputy* clerk who executed the certificate when he in fact is not a

deputy and did not himself execute it. Other than to cite the maxim "de minimis non curat lex," we will not dignify the claim with, comment. Bach also asserts that Code of Civil Procedure section 2015.5 was not complied with because the place of execution is not shown. But section 2015.5 deals with sworn statements only, and there is nothing in rule 42 which requires that the clerk's certificate be under oath.

Bach finally claims that declarations of Stone and of Michael J. Brady supporting the motion to dismiss are defective because under Code of Civil Procedure section 2015.5 the date and place of execution are not within the "penalty of perjury" statement. The Brady declaration closes as follows (the Stone declaration is identical):

"I declare under penalty of perjury that the foregoing is true and correct.

"Executed at Redwood City, California, on December 16, 1977.

"/s/ Michael J. Brady
Michael J. Brady"

This substantially complies with any placement requirements of section 2015.5 as to date and place of execution.

Our duty in these circumstances is clear. Bach's conduct is intolerable. It demonstrates a deliberate effort to achieve a stay of execution of the money judgment against him without complying with legal procedures. At oral argument, his reason for refusal to comply with the trial court's orders to deposit partnership funds into trust and to be sworn for examination was that the orders and the judgment of the court are invalid, as he will assertedly demonstrate during the appeal. This is the worst kind of bootstrapping. A trial court's judgment and orders, all of them, are presumptively valid and must be obeyed and enforced. (6 Witkin, Cal. Procedure, *supra,* Appeal, § 235, p. 4225.) They are not to be frustrated by litigants except by legally provided methods.

We have considered conditional dismissal in the manner of *Tobin* and *Arnold.* On the totality of the circumstances here involved we do not deem it appropriate at this time. Prior to expiration of our jurisdiction, Bach may seek partial or total relief from this dismissal, based upon

compliance with the spirit of our opinion; any such request will be given due consideration.

The appeal is dismissed.

Evans, J., and Reynoso, J., concurred.

A petition for a rehearing was denied May 22, 1978, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied June 22, 1978.