Filed 6/30/15

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| IRONRIDGE GLOBAL IV, LTD., | B256198 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC524230) |
| v. | |
| SCRIPSAMERICA, INC., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County.  Rolf M. Treu, Judge.  Dismissed.


Needham Law Firm and Carlos E. Needham for Defendant and Appellant.


Horvitz & Levy, David S. Ettinger, Steven S. Fleischman; Incite Law Group, and Mark A. Vegas for Plaintiff and Respondent.


———————————————

Plaintiff Ironridge Global IV, Ltd., sued defendant ScripsAmerica, Inc., to recover a debt. The parties were able to reach a settlement, by which defendant agreed to give plaintiff shares of defendant's stock in satisfaction of the debt. The agreement also provided a mechanism whereby plaintiff would receive additional shares if the value of defendant's stock decreased. The parties petitioned the court to enter judgment on their stipulated settlement, and to retain jurisdiction under Code of Civil Procedure section 664.6 to enforce the settlement. The trial court entered judgment as requested. Plaintiff later moved ex parte to enforce the settlement, because defendant had failed to complete a stock transfer required by its falling stock prices. The trial court entered an order compelling defendant to issue stock to plaintiff, and prohibiting defendant from transferring stock to any third parties until the outstanding shares were transferred to plaintiff.

Defendant appealed, arguing that the trial court lacked authority to restrain it from transferring shares to third parties, and that the court could not provide injunctive relief on an ex parte basis. Since entry of the order, defendant has transferred millions of shares of stock to third parties and has not issued any shares to plaintiff. Based on defendant's repeated violations of the trial court's order, plaintiff has moved to dismiss the appeal under the disentitlement doctrine. We agree that dismissal is the appropriate remedy for defendant's flagrant disregard for the order which is the subject of this appeal.

## BACKGROUND

On October 11, 2013, plaintiff sued defendant to collect a debt. On November 8, 2013, the parties filed a stipulation for settlement of plaintiff's claim, setting forth the terms of the parties' settlement, and asking the court to enter judgment in accordance with their stipulation. The parties' stipulation provided that plaintiff owned a legitimate claim against defendant, valued at $686,962.08, plus interest and attorney fees. To satisfy this claim, defendant would initially issue plaintiff 8,690,000 shares of

2

"unrestricted and freely [tradeable] exempted" common stock in its company.[1] The agreement contemplated additional stock transfers to plaintiff upon plaintiff's demand, in the event defendant's stock prices fell below a threshold amount (the value of the claim, plus an allowance for costs and attorney fees).

The agreement also provided that "Defendant has reserved and will continue to reserve all shares of Common Stock that could be issued to Plaintiff pursuant to the terms of the Order . . . ." "Defendant will not reserve, issue or transfer any shares of Common Stock to any other person unless and until sufficient shares have been irrevocably reserved for Plaintiff . . . ."

At the time the parties entered into the agreement, defendant had 150,000,000 shares of common stock of which 78,238,653 were issued and outstanding, and 34,265,051 were unissued and unreserved.

The agreement also provided that "[u]pon entry of the Order approving this Stipulation, the Action shall be dismissed in its entirety, with the Court retaining jurisdiction to enforce the terms of the Stipulation and Order by ex parte application, judgment, motion or other proceeding under Section 664.6 of the California Code of Civil Procedure."

On November 8, 2013, the parties jointly sought entry of the judgment on an ex parte basis. In support of the ex parte application, defendant's CEO, Mark Schneiderman, submitted a declaration averring that ex parte relief was necessary given the "volatility of the marketplace" and the significant fluctuations in the value of defendant's stock. Mr. Schneiderman averred that any delay in entry of judgment "may effectively preclude effectuation of a settlement, because of the likely continual variation in the company's stock price."

---

[1] There are state and federal provisions that exempt shares of common stock from registration requirements and other restrictions if transferred, with court approval, to satisfy a claim or debt. (See 15 U.S.C. § 77c, subd. (a)(10); Corp. Code, § 25017, subd. (f)(3).)

On November 8, 2013, the court entered judgment, signing the parties' proposed order which included the terms of the settlement.

On May 6, 2014, plaintiff moved, ex parte, for an order enforcing the settlement, and ordering defendant to issue to plaintiff 1,646,008 additional shares of stock owed under the adjustment mechanism of the stipulation, due to the poor performance of defendant's stock. Specifically, plaintiff sought an order requiring transfer of the stock, and restraining defendant from "issuing . . . any shares to any other person until" the outstanding shares were issued to plaintiff. Plaintiff was owed a total of 11,951,558 shares of stock under the adjustment mechanism, of which 10,305,550 had already been issued. Despite repeated demands for the outstanding shares, defendant had not issued them to plaintiff. Plaintiff's application urged that good cause existed to resolve the matter on an ex parte basis given the volatility of defendant's stock, and the congestion of the court's calendar. The application also set forth the calculations supporting the requested stock issuance.

In support of the application, counsel submitted a declaration stating that it gave defendant notice on May 1, 2014, of its intent to seek ex parte relief in the event the outstanding shares were not transferred. The parties were unable to reach a resolution, so plaintiff noticed the ex parte hearing for May 6.

Counsel's declaration also authenticated an April 29, 2014 email from plaintiff's counsel to defendant, providing that "[a]s of today, you owe Ironridge 1,646,550 additional shares. Based on today's 10 cent closing price, that equals $164,655.00. Please immediately issue the shares, or wire us the money." Counsel's May 5, 2014 ex parte notice to defendant indicated that plaintiff would ask the court to order issuance of the outstanding shares, or payment of $164,655.

Plaintiff also submitted a declaration by a certified financial analyst, averring that defendant's common stock was volatile, and that the price had fluctuated significantly. The declaration also set forth calculations for the stock plaintiff was owed under the adjustment mechanism.

4

In opposition to the application, defendant argued that plaintiff had violated federal securities law and "engaged in manipulative trading activity designed to artificially depress the value of Defendant's stock and thereby yield grossly unfair levels of issuance of stock to Plaintiff."[2] The opposition opined that "further issuances could be in violation of securities law." The "conclusion" portion of the opposition argued that "Plaintiff has not, and cannot, make a sufficient showing of a need for an immediate order compelling issuance of shares. Plaintiff's request should be adjudicated on a normal timetable that permits a responsible and careful consideration (and development) of relevant facts and law in the complex area of securities subterfuge and manipulation. Also, there is no need for any TRO in the interim to safeguard the shares. The shares are reserved and Plaintiff has, in effect, acknowledge that money damages would suffice in any event." The opposition did not dispute the correctness of the calculated shares plaintiff claimed it was owed.

No declarations or admissible evidence were submitted in support of the opposition. Rather, defendant's evidence consisted of a hearsay online article accusing plaintiff of manipulative trading activity, and an unauthenticated November 8, 2013 letter to defendant's transfer agent, instructing it to issue 8,690,000 shares to plaintiff (the initial issuance) and to reserve an additional 8,260,000 shares for plaintiff.[3] Also included was an unauthenticated letter from defendant's securities counsel, advising that the unregistered distribution of shares to plaintiff might violate federal securities law. The opposition also included press releases by the Securities and Exchange Commission

---

[2] Defendant subsequently filed a lawsuit against plaintiff in federal court, alleging claims for securities fraud, and "seek[ing] a declaration that it need not issue the additional 1,646,008 shares that the Superior Court has ordered it to issue." (*ScripsAmerica, Inc. v. Ironridge Global LLC* (C.D.Cal. 2014) 56 F.Supp.3d 1121, 1135.) Federal courts have exclusive jurisdiction over claims arising under the Securities Exchange Act. (15 U.S.C. § 78aa.)

[3] We note that this reservation is obviously insufficient to cover the over 11 million shares owed to plaintiff under the adjustment mechanism, of which over 10 million were issued.

(SEC) concerning settlements it made for civil proceedings commenced against entities who had abused the exemption provided for by title 15 of United States Code section 77c, subdivision (a)(10).

The trial court signed the proposed order, ordering defendant, within 24 hours of issuance of the order, "to issue . . . Plaintiff 1,646,008 shares" of common stock. The order also "restrained and enjoined [Defendant] from issuing or transferring any shares to any other person or entity until Defendant is in complete compliance with this Order." The order recited that the ex parte application "came on for hearing on May 6, 2014 . . . ." No reporter's transcript is part of the record on appeal.

Defendant immediately filed a notice of appeal.

## DISCUSSION

Plaintiff has moved to dismiss this appeal under the disentitlement doctrine, arguing that defendant has repeatedly violated the trial court's order restraining it from transferring shares of stock to third parties until it complied with its obligation to issue to plaintiff the 1,646,008 shares ordered by the court.[4] In support of its motion, plaintiff has submitted defendant's SEC filings indicating that defendant has transferred a total of 8,745,184 shares to third parties since the court entered its May 6, 2014 order.[5]

---

[4] The parties' appellate briefs do not dispute that the prohibitory portion of the order was not stayed pending appeal. (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 446; see also *Kettenhofen v. Superior Court* (1961) 55 Cal.2d 189, 191 ["An appeal stays a mandatory but not a prohibitory injunction"].) However, at oral argument, defendant argued that the prohibitory portion of the order was "functionally" stayed by the automatic stay of the mandatory portion of the order on appeal, as its only purpose was to enforce compliance with the mandatory portion of the order. We disagree. "An injunction may grant both prohibitive and mandatory relief, and when it is of this dual character, and an appeal is taken, such appeal will not stay the prohibitive features of the injunction, but as to its mandatory provisions said injunctions will be stayed." (*Ohaver v. Fenech* (1928) 206 Cal. 118, 123.)

[5] We grant plaintiff's unopposed request that we take judicial notice of certificates filed with the SEC by defendant and its officers. (Evid. Code, § 452, subds. (g), (h).)

6

Under the disentitlement doctrine, a reviewing court has inherent power to dismiss an appeal when the appealing party has refused to comply with the orders of the trial court. (*Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1229.) " 'Appellate disentitlement "is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction." [Citation.]' [Citation.]" (*Id.* at p. 1230.) The rule applies even if there is no formal adjudication of contempt. (*TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377, 379.) The disentitlement doctrine "is particularly likely to be invoked where the appeal arises out of the very order (or orders) the party has disobeyed." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 2:340, p. 2-203.) Moreover, the merits of the appeal are irrelevant to the application of the doctrine. (See *Stone v. Bach* (1978) 80 Cal.App.3d 442, 448 [rejecting defendant's claim that dismissal was not warranted because the orders he violated were "invalid"].)

"The power to dismiss an appeal for refusal to comply with a trial court order has been exercised in a variety of circumstances, including: where a parent had taken and kept children out of the state in violation of a divorce decree (*MacPherson v. MacPherson* [(1939)] 13 Cal.2d [271,] 272-273; *Knoob v. Knoob* [(1923)] 192 Cal. [95, 96]); where a husband had failed to pay alimony as ordered in an interlocutory judgment of divorce (*Kottemann v. Kottemann* [(1957)] 150 Cal.App.2d [483,] 484); where a party in a civil action was a fugitive from justice and in contempt of the superior court for failure to appear on criminal charges after being released on bail (*Estate of Scott* [(1957)] 150 Cal.App.2d [590,] 591-592); and where defendants willfully failed to comply with trial court orders regarding a receivership. (*Alioto Fish Co. v. Alioto* [(1994)] 27 Cal.App.4th [1669,] 1682-1685.) Moreover, the inherent power to dismiss an appeal has been exercised in several cases where a party failed or refused to appear for a judgment debtor examination. (*Say & Say v. Castellano* [(1994)] 22 Cal.App.4th [88,] 94; *Stone v. Bach*, *supra*, 80 Cal.App.3d at pp. 443-444; *Tobin v. Casaus* [(1954)] 128 Cal.App.2d [588,] 589, 593.)" (*TMS, Inc. v. Aihara, supra*, 71 Cal.App.4th at pp. 379-380.)

The doctrine was recently applied in *Gwartz v. Weilert* (2014) 231 Cal.App.4th 750, to dismiss the appeal of judgment debtors who repeatedly violated the trial court's postjudgment orders enjoining them from selling, transferring, or dissipating their assets. (*Id*. at pp. 755-758.)  Defendants' opposition to the motion to dismiss did not deny the transfers, but urged the transfers were made in "good faith." (*Id*. at p. 761.)  The appellate court found there was no factual basis for the claim the violation of the orders was made in good faith, and that "[t]he record shows that defendants are seeking the benefits of an appeal while willfully disobeying the trial court's valid orders and thereby frustrating defendants' legitimate efforts to enforce the judgment.  Therefore, we conclude the equitable considerations relevant to the disentitlement doctrine favor dismissal of this appeal." (*Ibid*.)

Here, defendant does not deny that it violated the court's order by transferring stock to third parties.  Defendant's paltry opposition to the motion to dismiss this appeal is one and a half pages long, and cites no authority whatsoever.[6]  The opposition argues that the parties' settlement did not restrict its ability to transfer shares of stock to third parties, and therefore the trial court exceeded its authority with its enforcement order. The opposition also argues that the mandatory portions of the injunction are invalid because the relief was granted on an ex parte basis, with no undertaking and no finding of irreparable harm.  Essentially, the opposition contends defendant was not required to comply with the trial court's "invalid" order.  However, we will not consider defendant's arguments on the merits of the injunction because arguments as to the merits are irrelevant to the application of the disentitlement doctrine. (*Stone v. Bach*, *supra*, 80 Cal.App.3d at p. 448.)

And, in any event, defendant's claims are plainly without merit.  A judgment is void when there is a lack of jurisdiction over the subject matter or the person. (*People v. American Contractors Indemnity Co*. (2004) 33 Cal.4th 653, 660.)  Additionally, a

---

**6**      Defendant's appellate reply brief briefly addresses the dismissal motion, and attempts to distinguish some of the authority relied upon by plaintiff.

judgment may be *voidable* when the trial court has subject matter and personal jurisdiction, but "exceeds its jurisdiction" because it " ' "has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." ' [Citation.]" (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1088; see also *Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1527, fn. 26.) An act that is in excess of jurisdiction, and merely voidable, is presumed valid until it is set aside, and a party may be precluded from setting it aside by waiver, estoppel, or the passage of time. (*People v. Ruiz* (1990) 217 Cal.App.3d 574, 584.) Nevertheless, "[a] person may refuse to comply with a court order and raise as a defense to the imposition of sanctions that the order was beyond the jurisdiction of the court and therefore invalid . . . ." (*In re Marriage of Niklas* (1989) 211 Cal.App.3d 28, 35 [addressing contempt].) However, a person "may not assert as a defense that the order merely was erroneous." (*Ibid.*)

Code of Civil Procedure section 664.6 allows the court to enter a stipulated judgment in settlement of a case, and to retain jurisdiction to enforce the settlement. Moreover, section 128, subdivision (a)(4) provides that the court has the power to "compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein." These provisions, together, give the court authority to fashion orders to enforce compliance with a stipulated judgment. (See *Blueberry Properties, LLC v. Chow* (2014) 230 Cal.App.4th 1017, 1020-1021 [Trial court had authority under sections 664.6 and 128 to appoint an elisor to execute a deed when a party refused to do so in violation of the parties' stipulation].)

Here, the parties requested that the court retain jurisdiction to enforce the settlement. The stipulation also provided that it could be enforced on an ex parte basis. There is no question that the court had jurisdiction over the parties and the subject matter, and that the parties expressly authorized the court to enforce the settlement on an ex parte basis. We find no procedural irregularity or other defect that would support a credible claim that the order was either void or voidable. Defendant's appeal merely challenges the order as erroneous. (See *Signal Oil & Gas Co. v. Ashland Oil & Refining Co.* (1958)

9

49 Cal.2d 764, 776.)  Defendant had no cause to disobey the court's order, but did so, repeatedly.  Defendant could have sought a stay of the order, but failed to do so.  (See *In re Christy L.* (1986) 187 Cal.App.3d 753, 758-759.)  Defendant also could have sought a writ of supersedeas in this court.  (Cal. Rules of Court, rule 8.824; see also Code Civ. Proc., § 923; *Food & Grocery Bureau v. Garfield* (1941) 18 Cal.2d 174, 177.)  Finding that a balance of the equities weighs in favor of dismissal, we grant plaintiff's motion.

## DISPOSITION

The appeal is dismissed.  Respondent is awarded its costs on appeal.


GRIMES, J.

WE CONCUR:

BIGELOW, P. J.


FLIER, J.