Filed 2/11/16  Marriage of Sullivan CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Marriage of REATTA and HOYT SULLIVAN. | B261871 |
| | (Los Angeles County Super. Ct. No. GD040861) |
| REATTA SULLIVAN, Respondent, v. HOYT SULLIVAN, Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce Iwasaki, Judge.  Dismissed.

Aaron Thomas Smith for Appellant.

Rodrigo Law Firm, Candice A. Garcia-Rodrigo for Respondent.

## INTRODUCTION

Appellant Hoyt Sullivan[1] appeals from the judgment entered in this dissolution proceeding. Respondent Reatta Sullivan moved to dismiss the appeal under the disentitlement doctrine. Based on Hoyt's conduct during the proceedings in the trial court, we agree that dismissal is warranted. We therefore grant the motion and dismiss the appeal.

## FACTUAL AND PROCEDURAL HISTORY

Reatta filed a petition for dissolution of marriage on March 29, 2007, after almost thirty years of marriage. The couple has two adult children. During the marriage, the couple owned and operated two "family businesses involved in the sale and distribution of wire," Alan Wire, a partnership, and Elcon Electronics, Inc. (the companies). Hoyt "fired" Reatta and "exclud[ed] her from the premises" in April 2007; it is undisputed that Hoyt maintained sole management and control over the companies thereafter. The couple also owned the property on which the companies' offices and warehouse were located.

A. *2007 Stipulation and Order*

On October 1, 2007, Reatta filed an application seeking "reasonable" spousal support and attorney's fees. She also requested the court order Hoyt to maintain her health insurance through the companies and to provide monthly accountings for the companies. The parties entered into a stipulation on October 31, 2007 that included the following terms: (1) Hoyt would be paid $3,000 per week compensation for operating the companies, commencing November 1, 2007 and "continuing until further order of the court"; (2) Hoyt and Reatta would each receive $17,500 per month "in equal partner draws," commencing November 1, 2007 and "continuing until further order of the court"; (3) Hoyt would collect rent for the business property, pay expenses, and provide equal, quarterly distributions of the profits to the parties; (4) Hoyt would provide a quarterly

---

[1] Because the parties share a surname, we refer to them by their first names for clarity. No disrespect is intended.

accounting for the companies; (5) the companies would maintain health insurance coverage for Reatta; (6) the companies would "be responsible for payment of any and all taxes associated with the partnership draws"; and (7) neither party would pay "any personal expenses from the business" other than medical and auto insurance. The stipulation further provided that the "ability of the 2 companies to continue" the monthly draws of $17,500 would be reviewed the following February,[2] and the court could appoint a "neutral CPA to make recommendations" in the event of a dispute. The stipulation was entered as an order by the court pending judgment or further court order that same date (October 2007 order).

B. *Subsequent Proceedings and Court Orders*

In February 2008, Reatta filed an ex parte application for an order to show cause, alleging that Hoyt had begun selling assets from the companies without an inventory or appraisal of the assets and had "threatened" to auction off other assets, including the couple's "extensive painting and gun collection." At a hearing on February 6, 2008, the court admonished Hoyt "not to sell or dispose of any assets of the marriage including the businesses," and "warned [Hoyt] that he could face possible jail time for violating" the court's orders.

Reatta later contended she stopped receiving her $17,500 monthly draws as of May 2008. Hoyt admitted he stopped the payments, but claimed he did so because the companies could not afford them and Reatta would not agree to modify the agreement. At hearings in 2008 and 2010, the parties were "ordered to comply with all existing court orders," and the October 2007 order was continued "in full force and effect." Similarly, at a hearing on August 3, 2011,[3] the court reiterated that the monthly payments to Reatta

---

[2] In February 2008, the court ordered that the issue of the companies' ability to continue the monthly draws would be reviewed at a later hearing. Although Hoyt contended that the agreed-upon distribution of $17,500 was "detrimental to the operation of the business," it does not appear from the record that the court reexamined the issue.

[3] After the case was transferred, proceedings appear to have been largely dormant during 2009 and part of 2010, due to a lengthy period in which the court file could not be located.

3

were to continue pursuant to the October 2007 order, noting that Hoyt was "not relieved of this order and . . . is to continue paying said amount" to Reatta.

At a hearing on October 24, 2012, the court reviewed the October 2007 order and noted that Hoyt had not complied with the monthly payments and had never sought a court order modifying the amount. Hoyt, appearing in propria persona, contended that the company[4] could not afford the payments. He admitted, however, that he was receiving $6,000 per week in salary, without a court order permitting that increased amount. The court then ordered Hoyt to pay $17,500 monthly to Reatta as spousal support, as of August 1, 2012, superseding the payment under the October 2007 order.

Counsel for Reatta also noted that he was preparing a motion to compel based on Hoyt's prior refusal to answer any questions at his deposition. In response to the court's questions on this issue, Hoyt admitted to walking out of the deposition, stating "I most certainly did. And I'll do it again and again and again, under the circumstances."[5]

Reatta also alleged that Hoyt, through the companies, reported $292,500 in disbursements to partners, none of which she ever received, causing her to incur substantial unwarranted tax liability. When questioned on this issue at the October 24, 2012 hearing, Hoyt first claimed Reatta was paid "every penny," then changed his statement to claim that the amounts reported were "accounted for" but not necessarily paid. The court noted that "again, I'm not seeing good faith in terms of . . . compliance with the prior order." The court further found "obstructionist behavior" by Hoyt. Accordingly, the court ordered Hoyt to pay $20,000 in attorney's fees to counsel for Reatta, pursuant to Family Code section 4320.

At a subsequent hearing, the court noted that Hoyt's longstanding, continued failure to pay was "the kind of thing that, frankly, this court, which does not like contempt proceedings, would be happy to entertain as an issue." In May 2013, the court

_____

[4] According to Hoyt, he closed Elcon Electronics in mid-2008 and was operating only Alan Wire after that time.

[5] Subsequently, in May 2013, the court granted a motion to compel Hoyt's appearance at his deposition and issued sanctions. During that hearing, Hoyt engaged in several outbursts, resulting in reprimand first by his own counsel and then by the bailiff.

4

again cautioned Hoyt that the "problem has been that this court has made orders which have been ignored. And the fact that you disagree with those orders is not a basis for not complying with them."

The assets and inventory of Alan Wire were sold in early 2014. On April 11, 2014, pursuant to an ex parte request by Reatta, the court ordered Hoyt to deposit the proceeds from that sale, approximately $949,000, into a trust account held by Reatta's counsel.

The bench trial began on April 14, 2014. At a hearing on the morning of the third day of trial, April 21, 2014, the court questioned Hoyt under oath regarding the sale proceeds. Hoyt admitted he had control of the proceeds and that they were in "an escrow account" held by him. The court stated that Hoyt was "currently in contempt of court . . . because you have been ordered to pay that over to petitioner's trust account," and then again ordered Hoyt to "do so now." Hoyt repeatedly refused. After questioning Hoyt as to whether he understood the order, the court found that Hoyt "underst[ood] completely and [was] simply refusing to answer," and that he was "evasive and contemptuous of the court with respect to stating whether he understood the nature of the court's order." The court concluded that Hoyt "has been in contempt of court. Is contemptuous of the court's orders. Has violated court orders." The court further found that Hoyt had "complete control" over the sale proceeds and "simply refused or ignored the court's order to turn the proceeds over."

Hoyt then stated he was "done" with the court and left the proceedings. He fired his attorneys later that afternoon and did not return for the remainder of the trial.[6] Trial proceeded and concluded the following day, April 22, 2014.

C. *Judgment*

The court entered the judgment of dissolution on December 9, 2014. In its written findings in support of the judgment, the court found that "throughout this litigation and

_____

[6] It appears that Hoyt re-hired his trial counsel as of December 2014, as trial counsel filed an objection to the proposed judgment on his behalf, and has continued to represent him on appeal.

5

during much of the marriage, Respondent, Hoyt Sullivan, engaged in a consistent and concerted pattern of fraudulent conduct calculated to cheat Petitioner, Reatta S. Sullivan, from receiving her lawful share of the business they owned, the value of her share of the other community property, and the receipt of court ordered spousal support.  [Hoyt] stands in an attitude of contempt to numerous orders made by the Court. . . .  His hands are unclean.  The disentitlement doctrine should apply to preclude any appeal [he] might seek."

In support of its suggestion to apply disentitlement (as well as its imposition of sanctions), the court made extensive findings regarding Hoyt's violation of court orders throughout the proceedings, including the following:  (1) In violation of the October 2007 order, Hoyt overpaid himself $768,000 in unauthorized weekly compensation.  He began paying himself $5,500 per week in October 2008, raising the rate from $3,000 without permission from Reatta or further order of the court.  He again increased this amount to $6,000 in October 2010.  He also paid himself several unauthorized bonuses between 2008 and 2011, totaling $250,000.  (2) Also in violation of the October 2007 order, Hoyt ceased paying Reatta her monthly draws of $17,500 as of May 2008.  In addition, Hoyt failed to make any of the monthly payments of $17,500 in spousal support under the October 24, 2012 order, which superseded the prior order.  (3) Hoyt terminated Reatta's health insurance in 2008, in violation of the October 2007 order.  (4) In violation of the October 2007 order, Hoyt failed to pay taxes on the monthly draws received by Reatta. Further, he falsely reported disbursements from the companies to Reatta that she never actually received, causing her to incur substantial additional tax liabilities.  (5) In violation of the October 2007 order, Hoyt paid personal expenses with company funds, including "virtually all of his attorney's fees and costs for this litigation," and "personal auto expenses."  (6) Hoyt "refused and failed to provide an accurate and timely accounting" of the financial activity for Alan Wire, also in violation of the October 2007 order.  (7) Hoyt "refused" to make any payments toward Reatta's attorney's fees, including the $20,000 ordered by the court on October 24, 2012.  (8) Hoyt "deliberately"

6

refused to comply with the court's 2014 orders to turn over the proceeds from the sale of community assets (Alan Wire) into an attorney trust account.

Ultimately, the court awarded $3,412,038.64 to Reatta. This amount encompassed, among other things, (1) Reatta's share of the proceeds from the sale of Alan Wire's assets and real property, (2) an equalization amount from the division of community property, (3) reimbursement based on Hoyt's use of Alan Wire funds to pay personal expenses, his cancellation of Reatta's health insurance and the unwarranted tax liability incurred by Reatta; (4) the unpaid monthly $17,500 draws to Reatta; and (5) various attorney fee awards. The court additionally awarded $33,150 in "attorney's fees previously awarded in this action."

D. *Appeal*

Hoyt timely appealed from the judgment. Prior to briefing, Reatta moved to dismiss the appeal. We deferred ruling on the motion to dismiss until the matter was fully briefed.

## DISCUSSION

A. *Disentitlement Doctrine*

"An appellate court has the inherent power, under the 'disentitlement doctrine,' to dismiss an appeal by a party that refuses to comply with a lower court order.' [Citations.]" (*Stoltenberg v. Ampton Investments* (2013) 215 Cal.App.4th 1225, 1229-1230.) "A party to an action cannot, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]" (*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277.) "Appellate disentitlement "is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction. . . ." [Citations.] No formal judgment of contempt is required; an appellate court 'may dismiss an appeal where there has been willful disobedience or obstructive tactics. (*Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1683.)' [Citation.] The doctrine 'is based upon fundamental equity and is not to be frustrated by

7

technicalities.' (*Stone v. Bach* (1978) 80 Cal.App.3d 442, 444.)" (*Stoltenberg, supra*, 215 Cal.App.4th at p. 1230.)

Courts have applied the disentitlement doctrine to dismiss an appeal "in a variety of circumstances, including: where a parent had taken and kept children out of the state in violation of a divorce decree [citations]; where a husband had failed to pay alimony as ordered in an interlocutory judgment of divorce [citation]; . . . where defendants willfully failed to comply with trial court orders regarding a receivership" (*Alioto, supra*, 27 Cal.App.4th at pp. 1682–1685), as well as "where a party failed or refused to appear for a judgment debtor examination. [Citations.]" (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265-266 (*Ironridge*).) In *Ironridge*, for example, the parties entered a settlement under which defendant agreed to transfer shares of its stock to plaintiff in satisfaction of a debt. Defendant failed to do so, and then repeatedly violated the trial court's order compelling defendant to transfer the stock to plaintiff and prohibiting defendant from transferring shares to third parties. (*Id*. at p. 261.) The court of appeal granted plaintiff's motion to dismiss the appeal, based on "defendant's flagrant disregard for the order" of the trial court. (*Id*. at p. 262.) Similarly, in *Alioto, supra*, 27 Cal.App.4th at p. 1676, defendants repeatedly refused to comply with trial court orders to deposit funds into a receiver's bank account and to provide certain financial information. The court of appeal first noted that formal contempt proceedings were not required, finding that the trial court's "successive orders to compel and imposing sanctions contain judicial findings that the appellants have persisted in willfully disobeying the trial court's orders." (*Id*. at p. 1683.) Accordingly, the court granted respondents' motion. (*Id*. at p. 1691.)

B. *Analysis*

Reatta contends that we should apply the disentitlement doctrine to dismiss Hoyt's appeal, based on his repeated and express refusal to comply with numerous orders of the trial court. We agree. As outlined above, throughout the dissolution proceedings, Hoyt refused to comply with court orders and ignored multiple warnings by the court regarding sanctions and possible contempt proceedings based on his conduct. His flagrant

8

misconduct includes outright refusal to obey the trial court's 2014 order that he turn over almost a million dollars in assets for safekeeping, as well as failure to make monthly payments to Reatta for approximately six years, while continuing to pay himself and using company assets for his personal expenses, in violation of court orders as well as the original agreement to which he himself stipulated. As such, dismissal is appropriate.

Hoyt does not dispute any of the misconduct outlined herein and did not provide any citations to evidence in his opposition to the motion to dismiss. Instead, he urges that the disentitlement doctrine should apply only in instances where the appeal was taken from an order "inherently related to the noncompliance or contempt." First, while the disentitlement doctrine "'is particularly likely to be invoked where the appeal arises out of the very order (or orders) the party has disobeyed' [citation]," (*Ironridge, supra,* 238 Cal.App.4th at p. 265), Hoyt cites no authority requiring such a link, and we do not find such a requirement to be consistent with past application of the doctrine or with the purposes underlying it. Second, Hoyt's appeal would satisfy this test. He asserts the following arguments on appeal: (1) the court was required to dismiss this matter in 2012 under the "five-year rule" and lacked jurisdiction thereafter; (2) the court lacked the authority to convert the October 2007 stipulation into a spousal support order; (3) the court erred in awarding sanctions to Reatta based on a finding that he committed fraud during the marriage; and (4) the final judgment was internally contradictory, inconsistent with prior findings and not based on sufficient evidence. As such, Hoyt challenges on appeal the validity of several of the very orders he disobeyed, as well as the findings and imposition of sanctions in the final judgment, which are based in part on his misconduct. Indeed, the trial court expressly found Hoyt to stand "in an attitude of contempt to numerous orders made by the court." Hoyt may not repeatedly and flagrantly violate the orders of the trial court and then challenge the basis for those orders on appeal. (See *Stone, supra*, 80 Cal.App.3d at p. 444 ["it would be a flagrant abuse of the principles of equity and of the due administration of justice to consider the demands of a party who becomes a voluntary actor before a court and seeks its aid while he stands in contempt of its legal orders and processes"].)

9

Additionally, Hoyt contends that his conduct was not so disruptive of the proceedings or prejudicial to Reatta as to make dismissal an equitable result. We disagree. Hoyt attempts to distill his misconduct into the single incident mid-trial in which he argued with the court and walked out, arguing that this conduct was admittedly inappropriate but has already been sanctioned by admission of Reatta's evidence without objection. Hoyt ignores, however, his violation of multiple court orders over nearly the entire course of this lengthy case, necessitating an enormous expenditure of resources by both Reatta and the court. Thus, his contention that his conduct does not merit dismissal is without support. Moreover, Hoyt's attempt to equate his blatant disobedience with "any resistance by a party to a discovery request," and thereby suggest that dismissal under the circumstances presented here would open the door to overly broad application of the disentitlement doctrine, is absurd.

Finally, Hoyt cannot avoid dismissal by arguing that his noncompliance was excused because the lower court's orders were invalid. Courts uniformly reject such arguments as "the worst kind of bootstrapping. A trial court's judgment and orders, all of them, are presumptively valid and must be obeyed and enforced. [Citation.] They are not to be frustrated by litigants except by legally provided methods." (*Stone, supra*, 80 Cal.App.3d at p. 448; see also *Ironridge, supra*, 238 Cal.App.4th at p. 265 ["the merits of the appeal are irrelevant to the application of the doctrine"].)

## DISPOSITION

The appeal is dismissed.  Reatta is awarded her costs on appeal.[7]

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


WILLHITE, Acting P. J.


MANELLA, J.

---

[7] Reatta also seeks attorney's fees from Hoyt as sanctions for filing a frivolous appeal.  In light of the dismissal of the appeal as a sanction for Hoyt's misconduct, we deny Reatta's motion for further sanctions.