Filed 3/16/26  In re S.D. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| IN re S.D., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B345209 (Super. Ct. No. 24JD-00036) (San Luis Obispo County) |
| COUNTY OF SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES,    Respondent, v. N.D.,    Appellant. | |

　　N.D. (Mother) appeals an order granting the petition of respondent Department of Social Services (DSS) to modify a prior order granting visitation and reunification services.  (Welf. &

Inst. Code,[1] §§ 388, 395, subd. (a)(1).) She contends the juvenile court abused its discretion when it found continued visitation would be detrimental to her son, S.D. She also contends the disentitlement doctrine should have barred DSS's petition because the agency failed to provide her with court-ordered reunification services. We will affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

DSS filed a dependency petition regarding S.D. pursuant to section 300, subdivisions (b)(1), (g) and (j) in March of 2024. DSS alleged Mother suffered a mental health crisis requiring hospitalization. Mother had longstanding substance abuse issues and prior juvenile dependency cases involving three other children. Father had previous convictions for domestic violence and sexual abuse of a minor. DSS placed S.D. with a confidential resource family in San Luis Obispo. The juvenile court ordered S.D. detained from Mother and ordered weekly one hour supervised visits.

The court sustained the section 300 petition after a contested jurisdiction and disposition hearing. It initially bypassed reunification services for both parents. Mother later petitioned to modify the bypass order. (§ 388.) She submitted exhibits showing she was participating in substance abuse treatment, mental health services, and parenting education. The court granted her petition in November of 2024. It ordered reunification services, including substantially increased visitation, vacated the section 366.26 hearing, and set a combined six- and twelve-month review hearing in April of 2025. Mother received two hours of supervised visitation with S.D. weekly.

_____

[1] All statutory references are to the Welfare and Institutions Code.

DSS petitioned to suspend visitation in February of 2025 after S.D. began refusing to attend. (§ 388.) His resource family reported that he suffered nightmares and soiled himself before visits. He resumed self-harm behaviors like picking his cheek and lips. In addition, Mother frequently violated the terms of visitation by feeding S.D. candy and offering him new toys. She called the police in advance of her last visit, resulting in a confrontation in S.D.'s presence when he refused to leave his resource family's car. Mother texted the resource mother afterward: "Why are you holding my son from me? I know you are attached to him but you have no right to keep him from me. You are . . . breaking the court order. You are not his mother. Stop trying to hold him from [me] you scared Bitch. Fuck you dumb cunt. That's my son."

S.D.'s mental health therapist told DSS she saw a "stark difference" in the boy after visitation increased. She recommended Mother not attend sessions going forward. S.D.'s occupational therapist said Mother interrupted sessions by performing tasks on his behalf, giving him unwanted affection, discussing case issues, and confronting S.D.'s resource mother about his care. S.D.'s skills and communication regressed when Mother attended, and he appeared uncomfortable and nervous. Minor's counsel supported the petition and expressed concern about Mother's compliance with her medications.

Mother blamed DSS for S.D.'s refusing to visit. She accused social workers of having no interest in complying with the November 2024 order granting reunification services because the resource mother sought to adopt S.D. Mother believed DSS filed the section 388 petition to influence the outcome of the upcoming 12-month review hearing. She stated S.D.'s current placement was "entirely inconsistent with supporting the ideals

3

of family reunification" and described the resource mother as going "out of her way to . . . trash [Mother] at every opportunity." Mother requested the juvenile court "reiterate the [November 2024] order that the department comply and offer [her] reasonable services so . . . [she] can get back on track and have S. returned home."

The court granted the petition. It stated: "I agree with [minor's counsel] that there is evidence supporting detriment. The issues with [Mother] and the boundaries which caused issues: Improper discussions, excessive affection, not following the rules, bringing toys. I agree with [minor's counsel] that there's a safety risk in [Mother] not taking medication, and it is an acute childhood experience to have brought the police. I find credible the evidence regarding S.'s reactions to visits. I am finding that the visitation continued is detrimental and the continued efforts are contrary to the well-being of the minor child, keeping . . . the best interest of the child in mind. So the visits are suspended per the request in the JV 180 that was outlined by the Court. I also do not find that concurrent planning has evidence of conflict."[2]

## DISCUSSION

### Standard of Review

A parent or interested person may petition to modify a juvenile court order by alleging: (1) changed circumstances or new evidence justifies the requested order; and (2) the requested

---

[2] The court terminated reunification services in September and set a selection and implementation hearing. We denied Mother's petition for extraordinary writ challenging the order. (*N.D. v. Superior Court* (Sept. 15, 2025, B346614) [nonpub. opn.].) Her appeal of the subsequent order terminating parental rights is pending. (*In re S.D.* (B349845, app. pending).)

4

order is in the child's best interests.  (§ 388, subds. (a)(1) & (b).)
The petitioner bears the burden of proof on each issue.  (*In re
Casey D.* (1999) 70 Cal.App.4th 38, 48, overruled on other
grounds by *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.)  "A
ruling on a section 388 petition is 'committed to the sound
discretion of the juvenile court, and the trial court's ruling should
not be disturbed on appeal unless an abuse of discretion is clearly
established.  [Citations.]'  [Citation.]  Thus, we may not reverse
unless the juvenile court exceeded the bounds of reason . . . ."  (*In
re D.B.* (2013) 217 Cal.App.4th 1080, 1088-1089.)

*Order Suspending Visitation*

"Visitation is an essential component of any reunification
plan."  (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972.)  It "shall
be as frequent as possible, consistent with the well-being of the
child."  (§ 362.1, subd. (a)(1)(A).)  The juvenile court, however,
may terminate visits upon finding they are detrimental to the
child.  (*In re F.P.* (2021) 61 Cal.App.5th 966, 973; § 362.1, subd.
(a)(1)(B); see *Serena M. v. Superior Court* (2020) 52 Cal.App.5th
659, 673 ["the juvenile court may deny visitation by finding that
forced contact with a parent is harmful to the child"].)

Mother contends the record contains no material evidence
of changed circumstances supporting the section 388 ruling.  She
argues S.D. exhibited the same purported signs of detriment long
before the juvenile court ordered reunification services in
November of 2024.  Similarly, she describes her own behavioral
problems during visits—such as offering toys and candy,
discussing her case, and confronting the resource mother—as
issues present since the case's inception.  She posits DSS
preferred adoption and "was not particularly interested" in
developing an evidentiary record showing the positive aspects of
her relationship with S.D.  DSS focused its efforts on proving

5

visitation was detrimental instead of providing the court-ordered services she needed to reunify with S.D.

We reject at the threshold Mother's argument that DSS could not base its petition on evidence S.D. resumed behaviors he exhibited before the November 2025 order. Such logic would tacitly accept a child's continuing signs of detriment so long as they suffered similarly in the past. The record supports the juvenile court's finding regardless. S.D's therapists stated that he regressed when Mother began participating in his sessions. His reluctance to attend visits before the court's November 2024 order grew into active resistance. Social workers described him stiffening like a board when carried toward Mother on one occasion. At the February 7 visit, he climbed back into his resource mother's car and repeatedly refused to get out. The February 14 visit was cancelled after he refused to climb in the social worker's car to attend. The juvenile court did not abuse its discretion by considering S.D.'s clearly stated preferences. It need not have accepted Mother's alternative narrative that "brainwashing" by DSS and his resource family caused him to feel this way.

*Disentitlement Doctrine*

Mother contends the disentitlement doctrine should have "prevented [DSS] from even bringing the section 388 petition" because it violated the November 2024 order to provide her with reunification services. We disagree. "Under the disentitlement doctrine, a reviewing court has inherent power to dismiss an appeal when *the appealing party* has refused to comply with the orders of the trial court." (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265, italics added.) "In dependency cases, the doctrine has been applied only in cases of the most egregious conduct *by the appellant,* which

6

frustrates the purpose of dependency law and makes it impossible to protect the child or act in the child's best interests." (*In re E.M.* (2012) 204 Cal.App.4th 467, 474, italics added.) Mother is the appealing party here. We decline to use the doctrine to address the merits of an argument not before us, i.e., whether DSS complied with an order of the juvenile court.

DISPOSITION

The order dated April 1, 2025 suspending Mother's visitation is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

7

Matthew G. Guerrero, Judge
Superior Court County of San Luis Obispo

_____

Konrad S. Lee, under appointment by the Court of Appeal, for Appellant.

Jon Ansolabehere, County Counsel, and Vincent M. Uberti, Deputy Counsel, for Respondent.