Filed 1/16/26  He v. University of San Diego CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| GILLIAN JINGRAN HE, Plaintiff and Appellant, v. UNIVERSITY OF SAN DIEGO et al., Defendants and Respondents. | D083219 (Super. Ct. No. 37-2021-00025073-CU-BC-CTL) ORDER MODIFYING OPINION AND DENYING REHEARING NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed December 24, 2025 be modified on page 23, after the first sentence of the first full paragraph ending "plaintiff's misconduct caused to USD," add new footnote 11 with the following language, which will require renumbering of all subsequent footnotes:

> In a petition for rehearing, plaintiff criticizes the court for omitting a discussion of evidence indicating her willingness to voluntarily sit for her deposition *after* USD sought terminating sanctions, which she believes proves that this was not "extreme" case of discovery abuse and that terminating sanctions were punitive rather than remedial. Although we need not substantively discuss every point or contention a party raises (*People v. Garcia* (2002) 97 Cal.App.4th 847, 853–854), we will add that this evidence did not persuade us the trial court abused its discretion in

imposing terminating sanctions, considering, among other things, plaintiff's willful violation of its discovery orders and the fact that the first deposition order was necessitated by her unwillingness to cooperate in scheduling her deposition. The other issues identified in plaintiff's rehearing petition were raised in the parties' briefs and were appropriately addressed in our opinion.

The petition for rehearing is denied.

No change in judgment.

DATO, Acting P. J.

Copies to: All parties

2

Filed 12/24/25  He v. University of San Diego CA4/1 (unmodified opinion)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GILLIAN JINGRAN HE, | D083219 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2021-00025073-CU-BC-CTL) |
| UNIVERSITY OF SAN DIEGO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Gillian Jingran He, in pro. per., for Plaintiff and Appellant.

Quarles & Brady, Michael C. Sullivan, Joanne Alnajjar Buser, and Kelly E. Kagan, for Defendants and Respondents.

Gillian Jingran He was academically disqualified from the University of San Diego School of Law at the end of her first year. She filed suit as a self-represented litigant, alleging that the school did not accommodate her medical conditions before disenrolling her. The merits of her claims were not tested, however, because her case was dismissed as a sanction for willfully violating three discovery orders and for her conduct while taking depositions of witnesses for the law school. The court also denied as untimely a motion to set aside the resulting judgment.

Plaintiff appeals the judgment of dismissal and the denial of her postjudgment set-aside motion. She attacks the findings of misconduct underlying the imposition of terminating sanctions or, alternatively, claims the order imposing this sanction was invalid because the court failed to (1) give notice that her deposition conduct would factor into its choice of sanction and (2) consider a less severe remedy than dismissal. She also contends her motion to set aside the judgment was timely filed and thus should have been evaluated on its substance. We confirm that plaintiff committed sanctionable discovery misconduct. And while it is almost always preferable to seek a plaintiff's compliance by first imposing an intermediate sanction short of dismissal, on the particular circumstances of this case we cannot say the trial court abused its discretion in dismissing the lawsuit and denying the set-aside motion after concluding that any lesser sanction would have been ineffective. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff enrolled at the University of San Diego School of Law (USD) in August 2019. She was academically disqualified at the end of her first year for maintaining a deficient grade point average. In 2021, representing

herself, plaintiff sued the university, its president, and the then-vice dean of the law school (collectively, USD or defendants), alleging several claims grounded in the theory that the school failed to accommodate her medical conditions before disenrolling her.

In a May 24, 2023 written order (sanctions order), the court found that plaintiff violated its prior discovery orders compelling (1) her deposition by November 15, 2022 (first deposition order); (2) her deposition on January 20, 2023 (second deposition order); and (3) supplementation of her responses to USD's demands for the production of documents (document demands) by February 18, 2023 (documents order). The court also found that plaintiff misused the discovery process during her depositions of three USD witnesses. At the same time as it imposed the terminating sanction, the court assessed monetary sanctions on plaintiff, something it had not done previously in the case.

Based on the sanctions order, a judgment of dismissal was entered in July 2023. The court subsequently deemed as untimely plaintiff's motion to set aside the judgment under the discretionary provision of Code of Civil Procedure section 473, subdivision (b).[1] Plaintiff appeals both the judgment and the denial of her postjudgment motion.

### DISCUSSION

Plaintiff's broad-based attack on the court's sanctions order starts by claiming that none of the referenced discovery orders was valid. Were she to fail in that endeavor, she also asserts that none was violated. In the event we conclude that plaintiff committed sanctionable misconduct, she urges us to set aside the sanctions order because the court neither gave her proper

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.

3

notice of all the grounds for imposing sanctions, nor considered less severe alternatives to dismissal. Finally, plaintiff requests that we review the trial court's denial of her section 473 motion.

Resolving these issues requires that we evaluate the trial court's exercise of discretion for abuse. (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1123 (*Britts*) [discovery orders]; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992 (*Doppes*) [selection of a discovery sanction]; *Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 230 [order denying motion for discretionary relief under § 473, subdivision (b)].) "The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.) We " 'view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it.' " (*Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1084.)

## A. *The Trial Court's Imposition of a Terminating Sanction*

1. *The First Deposition Order*

   a. *Additional Background*

Under the trial court's original scheduling order, USD's deadline to file its summary judgment motion was in September 2022, with trial set to begin in March 2023. After the summary judgment filing deadline had passed, defendants applied ex parte for an order continuing these and other trial-related dates because the parties for months had been unsuccessful in scheduling plaintiff's deposition. USD also wanted some extra time in the schedule in case a motion to compel plaintiff's deposition was required. The

4

court granted the requested continuance following a hearing conducted in early October 2022.

Before concluding the hearing, the court confirmed with USD that its inability to take plaintiff's deposition was "the hold up" in filing its summary judgment motion. The court wanted to "get this case going" by immediately setting a date for plaintiff's deposition. When plaintiff declined the court's request to pick a date in October 2022—she claimed she was not sure of her schedule—the court instead ordered plaintiff to sit for her deposition by November 15, 2022:

> "[The Court:] Ready? I want the deposition of the . . . plaintiff done by November 15th. That gives you six weeks to work it out. Fair enough?
>
> "[Ms. He:] Yes. Your Honor, I hope we can get all these depositions done by then, but –
>
> "[The Court:] Well, we just got to make sure yours gets done. And you can schedule whatever deps you think is [*sic*] important, Ms.—Ms. He. Okay?"

A minute order memorializing the court's ruling issued that day. In addition to amending the case schedule, it also contained the first deposition order, which stated that after "[h]aving heard from the parties, the court orders plaintiff's deposition to be completed by November 15, 2022."

Shortly thereafter, USD proposed by e-mail five dates for plaintiff's deposition—November 1, 7, 8, 9, or 14—and told her they would pick a date if she would not agree to one. On October 11, plaintiff replied that she would not comply with the first deposition order because she believed the court knew it "did not have the authority to issue the order . . . covering issues not sought in USD's ex parte application." She also indicated she would seek a

protective order if defendants noticed her deposition before the November 15 deadline. Plaintiff, however, did not identify any conflicts with those dates.

On October 17, USD noticed plaintiff's deposition for November 8. On October 19 and 20, she reiterated her belief that the first deposition order was invalid and stated for the first time that she was not available on any of the proposed dates. She did not suggest a different date or state why she was suddenly unavailable. On October 24, plaintiff disclosed that she "would be out of the country until at least November 14," though she did not indicate when she would be leaving.[2] In this message and another one on October 26, plaintiff told USD that she was unwilling to discuss her deposition until after she returned.

On November 4, plaintiff objected to USD's deposition notice on the grounds of unavailability and that the court's November 15 deadline was unlawful. She neither sought a protective order, suggested another date, nor appeared for her deposition.

In its sanctions order, the trial court found "without question" that plaintiff "willfully disobeyed the court's [first deposition] order." Focusing on plaintiff's excuse that her international travel prevented her from meeting the November 15 deadline, the court stated it was "not clear whether the travel was scheduled before or after the October 4, 2022 hearing but personal travel is not an adequate reason to disobey a court order." The court also took issue with plaintiff's assertions that she need not follow what she thought was a "knowingly issued unlawful order," stating that the order was required to be followed notwithstanding her contrary belief.

---

2    Plaintiff traveled from November 4 through November 15. Thus, as it turned out, her trip did not conflict with USD's proposed date of November 1.

b.  *Plaintiff willfully violated the first deposition order.*

Plaintiff begins her attack on the court's conclusion that she violated the first deposition order by claiming (1) this order was invalid because she was not afforded due process, and (2) the order was beyond the court's ex parte authority.  Next, she contends that she did not violate the order because USD did not do its part to work out a deposition date before the deadline.  Finally, plaintiff argues that any violation could not have been willful because she thought the first deposition order was invalid.  We are unconvinced in every respect.

Due process requires "those with an interest in the matter to have notice and the opportunity to be heard, so that the ensuing order does not issue like a 'bolt from the blue out of the trial judge's chambers.' " (*Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th 1282, 1286 (*Monarch Healthcare*).)  Notice and opportunity to be heard were lacking, plaintiff argues, because USD's ex parte application did not include a specific request to schedule her deposition.  While that may be true, so too is the fact that trial courts possess inherent authority to manage discovery "to insure the orderly administration of justice." (*Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 19.)  Plaintiff could hardly be surprised by the court's exercise of this authority to set a deadline for her deposition considering that it knew defendants' inability to take it prompted their request to adjust the case schedule.  Moreover, the court considered plaintiff's input on scheduling her deposition by imposing a completion deadline that was later than the date it contemplated setting the deposition for.  Plaintiff was afforded the process that was due her under the circumstances.

We are also satisfied that the court's exercise of this authority was appropriate in the ex parte context.  In plaintiff's view, the fact that the first

7

deposition order issued during an ex parte hearing means that it had to be supported by a showing of exigency warranting emergency relief—such as a possibility of irreparable harm to USD absent the order (Cal. Rules of Court, rule 3.1202(c))—which was not made here. But the court issued the first deposition order sua sponte, that is, "[w]ithout prompting or suggestion" by defendants. (See Black's Law Dict. (12th ed. 2024) p. 1728, col. 2.) Whereas USD was required to support its ex parte application with the showing required by rule 3.1202(c) of the California Rules of Court, the court's inherent authority to issue an *additional* discovery order on its own was not similarly constrained. (*Britts*, *supra*, 145 Cal.App.4th at p. 1123 [courts have discretion to make discovery orders].)

Having determined that the first deposition order was valid, we now turn to plaintiff's claim that she did not disobey it. Pointing to the court's statement during the above-quoted colloquy that she had six weeks to "work it out," plaintiff asserts that USD failed to do its part. She argues defendants did not work with her to schedule a mutually acceptable date for her deposition after they learned she was unavailable on November 8. In other words, plaintiff maintains that USD induced her to violate the first deposition order.

Plaintiff's argument distorts the record. The first deposition order plainly set November 15 as the deadline for plaintiff to sit for her deposition; the court's statements during the corresponding colloquy were just as clear. Yet plaintiff scheduled international travel for the first half of November 2022, a fact she did not disclose to USD until *after* it had proposed dates and noticed her deposition. And more than a week before her departure, plaintiff rejected all of USD's proposed dates and refused to discuss the matter further until she returned. She took this approach even though one of the dates USD

8

proposed (November 1) did *not* conflict with her itinerary. All the while, plaintiff made clear that she felt no sense of urgency in scheduling her deposition because she thought the first deposition order was invalid. The record amply demonstrates that the blame for missing the November 15 deadline rests squarely on plaintiff.

The court's finding that her violation was willful is likewise sufficiently supported.[3] "Willful" in this context means plaintiff "understood h[er] obligation, had the ability to comply, and failed to comply." (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 787 (*Deyo*).) Plaintiff argues that her genuine belief the first deposition order was invalid precludes a finding of willfulness. But a trial court's order is "presumptively valid and must be obeyed and enforced"; it may not "be frustrated by litigants except by legally provided methods." (*Stone v. Bach* (1978) 80 Cal.App.3d 442, 448.) The record establishes that plaintiff understood the obligation imposed by the first deposition order and simply chose not to comply with it.

2. *The Second Deposition Order*

a. *Additional Background*

On December 9, 2022, USD filed an ex parte application for an order shortening time on a motion for terminating sanctions based on plaintiff's failure to obey the first deposition order. In the alternative, USD requested an ex parte order compelling plaintiff's deposition for a date she told defendants she was available—January 20, 2023—and for monetary

---

[3]     Although a finding of willfulness is not required to impose evidence, issue, or terminating sanctions for a violation of an order compelling  a deposition or further response to a document demand (§ 2025.450, subd. (h); § 2031.310, subd. (i); see *Saxena v. Godfrey* (2008) 159 Cal.App.4th 316, 333–334), such a finding may factor into the selection of the appropriate sanction. (*Doppes*, *supra*, 174 Cal.App.4th at p. 992.)

sanctions. It represented to the court that plaintiff's continued refusal to sit for her deposition "effectively made it impossible to litigate this case."

Plaintiff filed a written response on the morning of the hearing, December 13.[4] As to her deposition, plaintiff confirmed her availability on January 20 but contended that an order compelling her attendance would be improper because USD had not established the urgency required for ex parte relief. Plaintiff's concern was that her nonappearance at a court-ordered deposition could lead to the imposition either a terminating or evidentiary sanction.

After considering the parties' papers and argument, the court compelled plaintiff's attendance at her deposition on January 20. During the hearing, the court warned plaintiff that "it better go forward; otherwise, everything is on the table, including terminating sanctions. I can't be any more clear." However, the court also responded to plaintiff's concern that she might unexpectedly become unavailable on that date by telling her that it "will cross that bridge when we get there. . . But I'm ordering it today." The court denied USD's other requests for relief.

USD promptly noticed plaintiff's deposition for the court-ordered date. By January 4, an attorney had agreed to represent plaintiff for the limited purpose of defending her during the deposition. On January 9, plaintiff asked USD to move the deposition to January 18 because her attorney had a potential conflict with the court-ordered date. Defendants accommodated this request and served plaintiff with a new notice.

Late in the afternoon of January 17, plaintiff told USD that she would not go forward with the deposition because there was a last-minute

---

[4]     On November 17, Plaintiff received notice of USD's plan to file its ex parte application.

10

disagreement with her attorney on the scope of his representation. Although plaintiff recognized that her attendance at the deposition had been compelled by a court order, she sought to reschedule it for three weeks later to give herself enough time to find another attorney.

The parties met and conferred on January 18 concerning plaintiff's refusal to be deposed. USD's counsel explained she was no longer available on January 20 because she scheduled other things for that day after moving the deposition. Counsel also said she would seek further guidance from the court and therefore was not willing to negotiate another date for plaintiff's deposition. For her part, plaintiff reiterated that she would be willing to sit for her deposition after she found another attorney.

In its sanctions order, the court found that plaintiff "refused to proceed" with her deposition "apparently because of last minute disputes with her limited scope counsel regarding the scope of his representation." The court continued: "But Plaintiff had ample time to ensure that she would be represented by counsel at her deposition and, failing that, could have proceeded in pro per. Plaintiff's decision to disobey the court's second order regarding her deposition was entirely of her own making." The court also deemed this violation to be willful.

b. *Plaintiff willfully violated the second deposition order.*

Plaintiff's challenges to the second deposition largely repeat her challenges to the first one. She begins by claiming that the second deposition order failed to satisfy due process because she was not given notice and a meaningful opportunity to be heard. Plaintiff also contends the order was invalid because the urgency required for ex parte relief was lacking. Finally, as before, plaintiff blames USD for her failure to meet the obligation imposed by this second order.

11

We can quickly dispense with plaintiff's validity challenges.  Due process was satisfied because plaintiff had notice of USD's ex parte requests and responded to them orally and in writing.  (*Monarch Healthcare*, *supra*, 78 Cal.App.4th at p. 1286.)  And it was well within the court's discretion to grant defendant's ex parte request for a second deposition order, considering that it was necessitated by plaintiff's violation of the first deposition order and her flippant attitude toward the court's authority.  (*People ex rel. Allstate Ins. Co. v. Suh* (2019) 37 Cal.App.5th 253, 257 ["We review a trial court's ruling on an ex parte application for abuse of discretion"]; *Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 295 ["The discovery law contemplates a need may arise for an ex parte motion to compel a witness to appear and answer questions at a deposition"].)

Although plaintiff recognizes that the second deposition order was "clear on its face" and was "directed to [her]," she again argues that USD caused her noncompliance.  She claims she was justified in refusing to be deposed on January 18 because of the last-minute conflict with her prospective attorney.  As for the court-ordered date of January 20, she believes USD's counsel's unavailability absolves her of the consequences of failing to comply.  She also states, after the fact, that had she known the court expected her to proceed in propria persona if her attorney was not available, she would have gone forward on January 18.

Plaintiff again advances arguments that misrepresent the record.  She made clear during the January 18 meet and confer session that she was unwilling to be deposed without representation, which she believed would take three weeks to secure.  There are no contemporaneous communications indicating her willingness to be deposed either on January 18 or 20.  Thus, the fact that USD's counsel was not available on the court-ordered date of

January 20 is of no moment.  Plaintiff's contention that she should not have been expected to be deposed without her attorney misses the larger point the trial judge was making, which was that she had plenty of time to work out the details of his representation.  That the situation blew up at the last minute falls on her shoulders.  These facts provide sufficient support for the court's finding that plaintiff willfully violated this order as well.

3.     *The Documents Order*

   a.     *Additional Background*

USD was also conducting written discovery while it was trying to schedule plaintiff's deposition.  At issue here are the document demands USD served in December 2021 to obtain information about allegations in plaintiff's complaint.  After a series of extensions, plaintiff's responses were due at the beginning of May 2022.

Although the discovery statutes require each individual document demand specify a "date for compliance"—i.e., a due date for the production of documents—none of defendants' demands in the appellate record included one.[5]  Accordingly, the parties' communications in the appellate record regarding these extensions refer only to the due dates for plaintiff's "responses"; they did not set or discuss separate compliance dates.  Plaintiff timely responded to USD's document demands by representing that she

---

[5]     Except in circumstances not present here, the propounding party must state in each demand a date for compliance 30 or more days after the demand was served.  (§ 2031.030, subd. (c)(2).)  Generally, the responding party must, under oath and within 30 days of service, respond to each demand by stating any objections, and stating the extent to which it will comply.  (§§ 2031.210–2031.260.)  Documents the responding party agrees to produce are due by the demand date absent an objection or an extension.  (§ 2031.280, subd. (b).)

would comply with some while objecting to the rest. She did not produce any documents with her responses.

On June 1, 2022, USD sent plaintiff a nine-page letter discussing the issues they perceived with her responses and requesting that she amend them by June 17. They also requested that plaintiff immediately provide any documents she agreed to produce. Having received no reply to their letter, defendants followed up with plaintiff on June 15. On June 20, still having heard no response, USD moved to compel (1) further responses to the demands to which plaintiff only objected and (2) compliance with the demands to which plaintiff responded that she would produce documents. As for the latter, defendants did not propose a court-imposed deadline for those productions.

In December 2022, plaintiff opposed the motion to compel on grounds that USD failed to make "a reasonable and good faith effort" to meet and confer about the perceived deficiencies because they did not communicate their issues to her by phone. (§ 2031.310, subd. (b)(2) [party moving to compel must file a meet and confer declaration under § 2016.040].) She did not take issue with USD's characterizations of her responses or the assertion that she had not produced any documents.

The court issued the documents order on January 13, 2023, following a hearing in which both parties participated. It first found that "the meet and confer efforts were adequate and there would be nothing more to be gained by requiring [an] additional meet and confer between the parties." The order also stated, "The motion to compel further *responses* to the [document demands] is granted. . . ." [¶] "Plaintiff is ordered to provide further *responses* within 30 days from today's date." (Italics added.) To the extent plaintiff planned to produce any medical records, the court instructed the

14

parties "to agree to a protective order as necessary." There was no discussion during the hearing or in the documents order of either USD's motion to compel plaintiff's compliance with its document demands or deadlines for plaintiff to produce responsive documents or to agree to a protective order.[6]

Plaintiff served amended, but unverified, responses to USD's document demands on February 17, 2023—five days after the deadline stated in the documents order.[7] Within the next few days, plaintiff provided a one-page privilege log, 45 pages of documents, and a verification. Although each party had proposed a protective order, they were not able to agree on one. Consequently, plaintiff did not produce medical records.

The court also found that plaintiff willfully violated this order. Although the documents order stated only that "responses" to USD's document demands were due in 30 days, the trial court wrote in the sanctions order, "The court's [documents] order required Plaintiff to produce a variety of different documents, including her medical records, subject to a protective order, within 30 days. [Citation.] Plaintiff did not timely serve any responses. Eventually, some responses were provided, but other documents remained outstanding because Plaintiff 'forgot' to produce them for months . . . ." The court also concluded that "[p]laintiff has refused to agree to a protective order."

---

[6] The day before the hearing, the court issued a tentative ruling that was materially the same as its final ruling. Despite the fact that the tentative ruling did not contain deadlines other than for plaintiff's responses, USD did not press for them during the hearing.

[7] USD served plaintiff with a notice of the court's documents order on January 18, 2023. Plaintiff believed that notice made her responses due on February 21, 2023.

15

b.     *Plaintiff willfully violated the documents order but not for all the reasons stated by the trial court.*

Plaintiff attacks the court's conclusion that she violated the documents order from two different angles.  She first seeks to invalidate it on the theory that the court erred in finding the meet and confer requirement of section 2031.310 was satisfied before USD filed its motion to compel.  If the documents order survives this scrutiny, plaintiff claims the court did not clearly establish the deadlines for producing documents and agreeing to a protective order it found she missed.

The party moving to compel further responses to document demands must support its motion with a declaration "stat[ing] facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion."  (§ 2016.040, cited in § 2031.310, subd. (b)(2).)  The sufficiency of an attempt to informally resolve a discovery issue is a question of fact reviewed for substantial evidence.  (*Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 430–431.)  Essentially, plaintiff complains that USD's efforts were deficient because it did not contact her by telephone.  But plaintiff does not dispute either that she received defendants' June 2022 discovery letter or that she chose not to respond to it.  The record is replete with electronic communications between the parties, which supports an inference that plaintiff's silence indicated she was not interested in discussing her responses.  Under these circumstances, we decline to disturb the court's finding that defendants' meet and confer efforts were sufficient.  (*Id.* at p. 432 [courts may consider "whether, from the perspective of a reasonable person in the position of the discovering party, additional effort appeared likely to bear fruit"].)

16

Plaintiff does not challenge the trial court's finding that she provided supplemental responses to USD's document demands after the deadline imposed by the documents order. Nor does she contend that she lacked the ability to comply. Our independent review of the record confirms facts supporting the trial court's conclusion that plaintiff's failure to timely respond was a willful violation.

That does not conclude our inquiry, however. The trial court found that plaintiff violated the documents order because she did not produce responsive documents or agree to a protective order by the 30-day deadline it imposed. But neither USD's document demands, the parties' communications regarding them, nor the documents order mentioned anything other than "responses." These details matter, as the discovery statutes make clear that "responding to a demand for production of documents is a completely different thing from producing documents in response to the demand." (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1518, fn. 15.) Plaintiff was entitled to construe the documents order consistent with these rules, and thus, we cannot say she willfully violated the order for these additional reasons cited by the court.

We suspect that USD—a represented party—and the court both assumed that plaintiff understood "responses" to include document productions and the entry of any required protective order. When all parties are represented, such assumptions might be justified. But "[j]udges should recognize that a propria persona litigant may be prone to misunderstanding court requirements or orders—that happens enough with lawyers—and take

17

at least some care to assure their orders are plain and understandable."[8] (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1285.)  If the trial court intended "responses" to include something more than what the discovery statutes describe, and if it contemplated sanctions for any unreasonable failure to agree to a protective order, it had an obligation to clearly express those additional expectations.  Because it did not, we must conclude that the court abused its discretion in finding that plaintiff violated the documents order by failing to produce documents and agree to a protective order within 30 days of its issuance.

4.    *The Sanctions Order*

    a.    *Additional Background*

In addition to responding to USD's requests for discovery, plaintiff was conducting her own discovery, including depositions of three USD witnesses identified as persons most qualified (PMQ) for certain topics.  Two of these depositions had concluded, but one was suspended by USD based on plaintiff's conduct during the deposition.  After plaintiff indicated she wanted more testimony from these three witnesses, USD in October 2022 moved for protective orders to prevent or limit the amount of time each person should be made available.  The basis for USD's motions was its belief that plaintiff had squandered her time with the witnesses by subjecting them to "repetitive, hypothetical, and argumentative questions" of each PMQ.

While these motions were pending, USD in February 2023 also moved for dismissal as a terminating sanction, or, alternatively, for orders compelling plaintiff to attend her deposition, compelling her compliance with

---

[8]    Plaintiff invokes these principles in connection with the two deposition orders, but the documents order is the only instance where we believe the court was obligated to more clearly explain the requirements for compliance.

the documents order (as USD interpreted it to include the production of documents), and for monetary sanctions. The bases for defendants' dismissal request were plaintiff's violations of the two deposition orders and the documents order. Plaintiff countered that the deposition orders were invalid, that she had substantially complied with the documents order by supplementing her responses within a few days of the deadline, and that USD had failed to account for the possibility of motivating her compliance through a less severe sanction (but she did not suggest one).

The court scheduled all of USD's motions for a hearing in May 2023. The day before this hearing, the trial court directed the parties to be prepared to answer five questions, none of which addressed plaintiff's behavior during the USD witnesses' depositions. And neither party addressed this topic during the hearing in connection with defendants' motion for terminating sanctions, although USD briefly mentioned as the basis for its requests for protective orders that plaintiff had badgered its witnesses.

As discussed above in more detail, the trial court ruled in USD's favor on its sanctions motion after finding that plaintiff had violated the first and second deposition order and the documents order. The court also characterized plaintiff's conduct during the three USD witness depositions as a "[m]isuse of the discovery process." On the appropriateness of dismissal as a first measure to address plaintiff's discovery misconduct, the court explained, "[p]laintiff's actions and failure to abide by the court's orders represent a practice of discovery abuse and disregard for the court that makes terminating sanctions appropriate. The court finds that further hearing and orders would not be of any help in ensuring plaintiff litigate

19

her case in a manner permitted by law." In addition, the court imposed monetary sanctions of $1,200.

b. *The trial court did not abuse its discretion in imposing the terminating sanction of dismissal.*

We have concluded that plaintiff misused the discovery process when she violated the first and second deposition orders and—only insofar as it concerned her responses to USD's document demands—the documents order. Although plaintiff appears to recognize that sanctions were available under these circumstances, she claims the trial court's decision to impose the terminating sanction of dismissal was fundamentally flawed because: (1) she lacked notice the court would deem her deposition conduct to be discovery misuse and rely upon that finding in selecting a sanction, and (2) the court did not consider imposing a less severe sanction.

The Civil Discovery Act (the Act) (§ 2016.010 et seq.) authorizes sanctions for a party's misuse of the discovery process.[9] Monetary, issue, evidentiary, and terminating sanctions are available under the Act to address discovery misconduct. (§ 2023.030, subds. (a)–(d).) The latter category—which includes "dismissing the action" (*id.*, subd. (d)(3))—was statutorily available as a first measure to address plaintiff's violation of any one of the two deposition orders and the documents order. (§ 2025.450, subd. (h) [noncompliance with order compelling attendance at deposition]; § 2031.310, subd. (i) [noncompliance with order compelling further responses to document demands].)

---

[9] As relevant here, "[e]mploying a discovery method in a manner or to an extent that causes unwarranted annoyance, embarrassment, or oppression, or undue burden and expense[]" and "[d]isobeying a court order to provide discovery" are sanctionable "[m]isuses of the discovery process." (§ 2023.010, subds. (c), (g).)

Although a court enjoys "broad discretion" to choose the appropriate sanction, "[t]he discovery statutes evince an incremental approach . . . starting with monetary sanctions and ending with the ultimate sanction of termination." (*Doppes*, *supra*, 174 Cal.App.4th at p. 992.) But " 'where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' " (*Ibid.*; see also *Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th at 566, 604 ["in extreme cases a court has the authority to order a terminating sanction as a first measure"]; *Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1269 [sanctioned party must establish "substantial justification" for misconduct].) Whatever sanction a court chooses " ' "should not exceed that which is required to protect the interests of the party entitled to but denied discovery." ' " (*Doppes*, at p. 992.) In other words, "[t]he trial court cannot impose sanctions for misuse of the discovery process as a punishment." (*Ibid.*)

Plaintiff first claims she lacked notice that her deposition conduct would be a factor in the court's choice of sanction. As a general rule, "[w]hen sanctions are at issue, due process can be satisfied if the court gives a clear warning identifying the anticipated grounds for the sanctions or if those grounds are identified by the opposing party, and the court provides counsel with an opportunity to respond at least orally." (*Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 631–632.) We agree with plaintiff that neither USD nor the trial judge specifically suggested her deposition conduct would be relevant to choosing a sanction. A court, however, "must examine the entire record in determining whether the ultimate sanction should be

imposed." (*Deyo, supra*, 84 Cal.App.3d at p. 796.)  In this case, plaintiff knew her deposition conduct was well documented in the record that was before the court on the day USD's motion for terminating sanctions was heard.  As a result, we decline to find that plaintiff lacked adequate notice of this basis for the court's order.

As to the court's choice of the terminating sanction of dismissal, plaintiff asserts that the court failed to consider a less severe alternative and, as a result, employed the sanction as a punishment rather than as a remedy for the harm her conduct caused to USD.  We disagree in both respects.

Before issuing its second deposition order, the court warned plaintiff that violating it could result in a terminating sanction.  Yet even after receiving that warning, plaintiff violated the second deposition order *and* the documents order.  Although it is nearly always the better practice to begin by imposing a lesser sanction, these actions combined with plaintiff's recalcitrance concerning the first deposition order make this an extreme case where we cannot say that imposition of the terminating sanction in the first instance fell outside the bounds of all reason.[10]  (See *J.W. v. Watchtower Bible and Tract Society of New York, Inc.* (2018) 29 Cal.App.5th 1142, 1170 ["Given that the prospect of terminating sanctions did not motivate Watchtower to comply with the court's discovery order, it is logical to conclude that lesser sanctions would have been ineffective in motivating Watchtower to comply"]; *Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1105 (*Liberty Mutual*) ["The question before us ' "is not whether the trial court should have imposed a lesser

_____

[10]    Although the record amply supports the trial judge's conclusion that another sanction would have been futile, the parties would have benefitted from a more thorough explanation why.

22

sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose" ' "].)

The remedy of dismissal was also reasonably tailored to the harm plaintiff's misconduct caused to USD. " ' "An important aspect of legitimate discovery from a defendant's point of view is the ascertainment, in advance of trial, of the specific components of plaintiff's case so that appropriate preparations can be made to meet them." ' " (*Liberty Mutual*, *supra*, 163 Cal.App.4th at p. 1105) [upholding imposition of terminating sanctions]; see also *Moofly Productions, LLC v. Favila* (2020) 46 Cal.App.5th 1, 11 ["terminating sanctions are appropriate only if a party's failure to obey a court order actually prejudiced the opposing party"].) For more than a year, plaintiff frustrated defendants' efforts to defend against her claims: she refused to voluntarily sit for her deposition, persisted in her refusal despite *two* court orders, and failed to timely respond to the defendants' document demands despite *another* court order. Because "[p]rejudice is inherent in such tactics" (see *Liberty Mutual*, at p. 1105 [discussing delay of over a year]), dismissing plaintiff's complaint for her discovery misconduct was not an abuse of discretion.[11]

## B.     *Plaintiff's Section 473 Motion*

### 1.     *Additional Background*

As noted, the court issued its order dismissing plaintiff's case on May 24, 2023. On June 14, arguing that USD had not yet served notice of entry of that order, plaintiff asked the court to delay entering judgment for 60 days so

---

[11]     Accordingly, we need not reach USD's argument that we should affirm based on the disentitlement doctrine, a legal principle that permits a reviewing court to dismiss an appeal "when the appealing party has refused to comply with orders of the trial court." (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265.)

that she could timely file a motion for reconsideration. According to plaintiff, her medical conditions prevented her from making her strongest arguments against sanctions and, for this reason, she planned to file a request for medical accommodations under the Americans with Disabilities Act and/or rule 1.100 of the California Rules of Court before she filed her motion. Having received neither a reconsideration motion nor an accommodation request, on July 5 the court entered judgment for USD. USD served plaintiff with a notice of its entry on July 31.

Plaintiff subsequently reserved a September 26 date on the trial court's ex parte calendar and, on the day before the hearing, she filed an application for relief under the discretionary provision of section 473, subdivision (b).[12] The majority of her application was a restatement of her unsuccessful arguments for opposing terminating sanctions, but couched in section 473's language of "mistake" or "surprise." She also claimed entitlement to relief from judgment for "excusable neglect" in failing to request a continuance of the hearing on USD's motion and a tentative ruling, which she characterized as a medical accommodation for her "anxiety related symptoms." According to her accompanying declaration, plaintiff filed the application "at the earliest time possible given [her] disability and well within 6 months after the order and judgment [was] entered." She did not serve defendants with her papers before the hearing.

USD nonetheless filed a prehearing response claiming, among other things, that plaintiff's attempt to show diligence was inadequate because

---

12     "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake . . .surprise, or excusable neglect. Application for this relief . . . shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (§ 473, subd. (b).)

whatever arguments plaintiff could raise would not have been " 'made within a reasonable time' " under section 473.  Observing that the gist of plaintiff's application was a restatement of her prior unpersuasive arguments in opposition to sanctions, the court characterized her application as an untimely motion for reconsideration.  (See § 1008, subd. (a) ["any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order"].)

2.      *The trial court could find that plaintiff's application for relief was untimely.*

Plaintiff claims her application for relief under subdivision (b) of section 473 was timely filed—and a remand for the trial court to consider its merits is necessary—because she submitted it within the discretionary provision's six-month deadline.  As it did in the trial court, USD counters that even though the application was filed within six months of the judgment, plaintiff must also show she was otherwise diligent in seeking relief.  This additional diligence requirement was not met, according to USD, because plaintiff filed it two months after indicating she would seek reconsideration of the sanctions order.

Neither party, however, squarely addresses a preliminary issue:  Was the trial judge correct in determining that plaintiff's application was really a motion for reconsideration?  As we read it, plaintiff's application challenged the merits of the sanctions order, mostly based on allegedly "new or different . . . circumstances" (§ 1008, subd. (a))—namely, how her late discovery of potential medical accommodations led her to believe that she could have relied on additional facts and arguments the court would have found

25

persuasive. Indeed, plaintiff told the court and opposing counsel that she planned to file a reconsideration motion for this reason yet failed to do so for nearly a month before judgment was finally entered.[13]

Against this backdrop, we find no abuse of discretion in either the court's characterization of plaintiff's application or its decision to deny it as untimely. A motion for reconsideration under section 1008 is the exclusive procedure for challenging the merits of an order. (*Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1498–1500.) "The name of a motion is not controlling, and, regardless of the name, a motion asking the trial court to decide the same matter previously ruled on is a motion for reconsideration under . . . section 1008." (*Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577.) Plaintiff's application did just that; it requested the court to decide again the matter of sanctions. But once the trial court entered judgment, it lost jurisdiction to do so. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 859, fn. 29.)

The court's finding of untimeliness was also correct to the extent any portion of plaintiff's application could be read as properly invoking the discretionary provision of section 473, subdivision (b). As noted, a litigant must request discretionary relief "within a reasonable time" but no later

---

[13] Ultimately, her arguments in support of her request for section 473 relief were the same as she had outlined as the basis for reconsideration. In her Request for Delay in Entry of Judgment, plaintiff expressed her intention to file a motion for reconsideration under section 1008 based on new facts demonstrating a disability due to severe anxiety. As a result, she claimed she "did not make the arguments against terminating sanctions that she intended to make." In her section 473 motion, plaintiff asserted that because of "depression and extreme anxiety," she was "not thinking properly" at the sanctions hearing such that she "was unable to present the arguments that she meant to present to the Court to demonstrate that it should not grant the motion for terminating sanctions."

26

than six months after the order or judgment being challenged. (§ 473, subd. (b).) Accordingly, the movant "must show *diligence* in making the motion," and " '[w]hether a party has acted diligently is a factual question for the trial court.' " (*Younessi v. Woolf* (2016) 244 Cal.App.4th 1137, 1145 (*Younessi*).) " ' "[W]hat is a reasonable time in any case depends upon the circumstances of that particular case." ' " (*Ibid.*)

The record amply supports the trial court's implicit finding of a lack of diligence on plaintiff's part. (See *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1420 [finding of lack of diligence may be implied].) Her representation that she applied for relief as early as her medical conditions would permit is not sufficient, as it leaves unexplained why it took her more than two months after judgment was entered to adapt the discretionary provision's framework to her (1) previous arguments opposing USD's sanctions motion and (2) three-month-old belief that a medical accommodation might have changed the outcome on that motion. On this record, the court did not abuse its discretion in concluding that any section 473 grounds were not timely raised. (See *Younessi, supra*, 244 Cal.App.4th at p. 1145 ["Given the absence of evidence explaining the seven-week delay in seeking to set aside the dismissal, the diligence requirement was not satisfied"].)

## DISPOSITION

The judgment of dismissal and order denying the motion to set-aside judgment are affirmed.  USD shall recover its costs on appeal.

DATO, Acting P. J.

WE CONCUR:

KELETY, J.

RUBIN, J.